149 N.J. Super. 174 (1977)
373 A.2d 657
LEONARD O'NEAL, APPELLANT,
v.
NEW JERSEY STATE PAROLE BOARD, RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued January 18, 1977.
Reargued March 15, 1977.
Decided April 6, 1977.
*177 Before Judges LYNCH, MILMED and ANTELL.
Mr. Alan S. Ziegler argued the cause for appellant (Office of Inmate Legal Services, attorney; Messrs. Ziegler and Dennis J. Conklin on the briefs).
Mr. Leonard A. Peduto, Jr., Deputy Attorney General, argued the cause for respondent (Mr. William F. Hyland, Attorney General, attorney; Mr. Stephen Skillman, Assistant Attorney General, of counsel).
The opinion of the court was delivered by LYNCH, P.J.A.D.
Leonard O'Neal appeals from the decision of the New Jersey State Parole Board (Board) whereby it rescinded a parole release date which it had given him while he was an inmate in Rahway State Prison. The ground of the rescission was that, as he awaited release and while resident at a "half-way house" in Newark, he was indicted for participating in an armed robbery in that city.
The central legal issue here is to what extent a prisoner, who has been advised of a parole date in futuro, is entitled *178 to due process protections in a proceeding to rescind that date prior to actual release (hereafter termed a "rescission" proceeding). In more specific terms, the question in this case is whether in a hearing in such a proceeding the inmate is entitled to confrontation and cross-examination of witnesses against him, one of the due process protections guaranteed to a parolee in a parole revocation proceeding by the decision in Morrissey v. Brewer, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). Appellant relies not only upon Morrissey in support of his contention that he be confronted with the witnesses against him, but also upon the decision of our Supreme Court in Avant v. Clifford, 67 N.J. 496 (1975).
Respondent Board contends that the Morrissey protections are not appropriate to a rescission proceeding and that in this context Avant does not have the significance which appellant would ascribe to it. The Board contends that the governmental function involved in a rescission proceeding is akin to that in a decision to grant or deny parole in the first instance and therefore no greater due process protections are to be afforded in rescission than those set forth in Monks v. N.J. State Parole Board, 58 N.J. 238 (1971), with respect to granting or denying parole. Alternatively, the Board contends that a rescission proceeding is analogous to a prison disciplinary proceeding because in both instances the inmate is still confined and the potential loss of freedom which generates the need for the Morrissey rights in revocation proceedings is not present. Therefore, the Board argues that, at best, an inmate in a rescission proceeding should be afforded no greater due process protections than those established for a disciplinary proceeding in Wolff v. O'Donnell, 418 U.S. 539, 94 S.Ct. 2963, 41 L.Ed.2d 935 (1974), and Baxter v. Palmigiano, 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). Wolff and Baxter, unlike Morrissey, do not afford the inmate the right of confrontation of the witnesses against him. In fact, *179 they expressly assert the inappropriateness of such right in a disciplinary proceeding.
The issue before us generated from the following facts. Appellant was confined in Rahway State Prison serving a 5-7-year term imposed upon him as a result of a conviction for robbery. In May 1975 the Board granted him a parole release date of November 18, 1975. While awaiting release O'Neal was transferred from the prison to a "half-way" facility, Newark House. During his residence there he commuted to a job during the day and was free to visit his family and friends in the evenings. In September 1975 an armed robbery occurred near Newark House and O'Neal was arrested and charged with the crime. The arrest was based upon photographic identifications of O'Neal by two eyewitnesses to the robbery. As a result of the identifications O'Neal was transferred back to Rahway State Prison.
Prior to indictment on the robbery charge a final rescission hearing (for the purpose of rescinding O'Neal's parole date) was conducted on November 17, 1975. The hearing officer admitted into evidence police reports recounting the eyewitness identifications of O'Neal. O'Neal was advised of his right to remain silent. He denied his involvement in the commission of the offense, essentially asserting an alibi defense. He requested that any witness who identified him through a photo be called to testify in person and reaffirm his identification while confronting him in person. His request for such confrontation was not granted. Thus the issue herein.
O'Neal was indicted for the robbery offense on November 26, 1975, and on December 1, 1975 the Board rescinded the release date which had previously been given him. The rescission was based upon the photographic identifications to which the police reports referred and his subsequent indictment. The Board informed O'Neal that it "was no longer of the opinion that there is a reasonable probability that you would assume a proper place in society without violation of the law. The State Parole Board is of *180 the opinion that your release, at this time, would be incompatible with the welfare of society." This is the standard applied in determining whether parole should be granted in the first instance. N.J.S.A. 30:4-123.14.
Subsequent to the filing of this appeal O'Neal was acquitted of the charge of robbery, was granted a new parole date, and was released on September 21, 1976. The Board's motion to dismiss the appeal for mootness was denied. Cf. State v. Dalonges, 64 N.J. 9 (1973)[1]; Youth Correctional Center Bd. of Trustees v. Davis, 147 N.J. Super. 540 (1977).
Turning to the due process problem herein, the reported decisions on the constitutional rights mandated for a rescission hearing reach varying results. Some hold that none of the constitutional protections are appropriate. See McIntosh v. Woodward, 514 F.2d 95, 96 (5 Cir.1975); Sexton v. Wise, 494 F.2d 1176, 1178 (5 Cir.1974); Clifford v. Beto, 464 F.2d 1191, 1193 (5 Cir.1972); Koptik v. Chappell, 116 U.S. App. D.C. 122, 321 F.2d 388, 392 (D.C. Cir.1963); United States ex rel. Felder v. U.S. Bd. of Parole, 307 F. Supp. 159 (D. Conn. 1969); Temple v. Smith, 548 P.2d 1274 (Utah Sup. Ct. 1976); State ex rel. Van Curen v. Ohio Adult Parole Auth., 45 Ohio St.2d 298, 345 N.E.2d 75 (Sup. Ct. 1976); Bailleaux v. Cupp, 16 Or. App. 573, 520 P.2d 483, 486 (Ct. App. 1974); Williams v. New Mex. Dept. of Corrections, 84 N.M. 421, 504 P.2d 631, 633 (Sup. Ct. 1972). Others apply to rescission hearings the same due process rights as guaranteed in Morrissey v. Brewer, supra, with respect to revocation hearings. See Williams v. U.S. Bd. of Parole, 383 F. Supp. 402 (D. Conn. 1974); Batchelder v. Kenton, 383 F. Supp. 299 (C.D. Cal. 1974); Anderson v. Nelson, 352 F. Supp. 1124 (N.D. Cal. 1972); Colligan v. United States, *181 349 F. Supp. 1233 (E.D. Mich. 1972); Gee v. Brown, 14 Cal. 3d 571, 122 Cal. Rptr. 231, 536 P.2d 1017 (Sup. Ct. 1975); Monohan v. Burdman, 84 Wash.2d 922, 530 P.2d 334 (Sup. Ct. 1975) (en banc); Means v. Wainwright, 299 So.2d 577 (Sup. Ct., Fla. 1974). A third class, equating the interests involved in a rescission decision to prison disciplinary cases, would apply only the protections afforded by Wolff v. O'Donnell, and Baxter v. Palmigiano, supra, which do not, as we have said, afford the right of confrontation of witnesses. See Jackson v. Wise, 390 F. Supp. 19 (C.D. Cal. 1974).
The decision as to what due process protections shall be afforded is bottomed on a determination of the significance of the governmental function involved as well as of the private interests that have been affected by governmental action. Morrissey v. Brewer, supra, 411 U.S. at 481, 92 S.Ct. 2593, quoting from Cafeteria Workers v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961). Our analysis of the interests involved  government's and inmate's  leads us to conclude that the due process protections prescribed for prison disciplinary proceedings in Wolff and Baxter are most appropriate for a rescission proceeding, as applied in Jackson v. Wise, supra.
We prescind from consideration of appellant's interest in his status as a resident of the Newark "half-way" house because any loss of that privilege was a result of a discretionary decision on the part of prison authorities to transfer an inmate from one "institution" to another. There is no liberty interest of a prisoner which is infringed in that context. Meachum v. Fano, 427 U.S. 215, 96 S.Ct. 2532, 49 L.Ed.2d 451 (1976); Montanye v. Haymes, 427 U.S. 236, 96 S.Ct. 2543, 49 L.Ed.2d 466 (1976). Therefore, we limit our consideration of appellant's interest to his loss of prospective liberty due to the rescission of his projected release date.
What, then, is the precise nature of the governmental function in determining whether a parole release *182 date is to be rescinded? Some aspects of the decision-making procedure in a rescission proceeding are analogous to the determination of whether to grant or deny parole. In the latter instance the question is predictive in nature in the sense that the Board must determine whether there "is reasonable probability that, if such prisoner is released, he will assume his proper and rightful place in society, without violation of the law, and that his release is not incompatible with the welfare of society." N.J.S.A. 30:4-123.14. The same standard is relevant in determining whether, given the information on hand at the time of a rescission hearing, the inmate should be released. Thus it is that the Board has adopted the following regulation relating to parole rescission. N.J.A.C. 10:70-5.1 reads as follows:
The Board may nullify a previous parole decision at any time prior to the effective date of said parole if facts, circumstances or conditions are brought to the attention of the Board, which, in the exercise of its discretion, would make the parole of the subject incompatible with the welfare of society.
Clearly that regulation is within the rule-making powers granted to the Board by N.J.S.A. 30:4-123.6.
The discretion ceded to the Board in determining whether there should be a release on parole is broad. Puchalski v. N.J. Parole Bd., 104 N.J. Super. 294 (App. Div.), aff'd 55 N.J. 113 (1969), cert. den. 398 U.S. 938, 90 S.Ct. 1841, 26 L.Ed. 2d 270 (1970). Courts must give great weight to the expertise of the Board in dealing with parole decisions and should not intervene therein unless it clearly and convincingly appears that the Board abused its discretion. State v. Lavelle, 54 N.J. 315 (1969).
If we were to equate the governmental function on a rescission question to the grant or denial of parole, only those due process protections applicable to a parole hearing would be appropriate. On denial of parole the Board is required only to give a statement of reasons for the denial. *183 Monks v. N.J. Parole Board, supra. Such a statement was given to O'Neal after rescission of his release date.
However, in spite of the great similarities between the governmental function and interest in parole release and rescission, we reject the hypothesis which would hold them to require the same due process standards because of the differing interests of the inmates involved. The liberty interest of one who has been given a release date and is able to make plans to see family and friends, to seek employment and a new home in society, is certainly greater than the interest of one who only harbors faint hopes of such possibilities as in parole. Something more than the due process rights granted in Monks v. N.J. Parole Board, supra, is needed when an inmate is under parole consideration.
In considering whether we should follow that class of decisions which would apply the full Morrissey v. Brewer protections in the rescission context we look to the nature of the interests involved in that process as against revocation of parole (Morrissey).
In Beckworth v. N.J. Parole Bd., 62 N.J. 348 (1973), our Supreme Court noted that Morrissey v. Brewer, in quoting from Judge Kaufman's opinion in United States ex rel. Bey v. Conn. State Bd. of Parole, 443 F.2d 1079 (2 Cir.1971), recognized the distinction between parole release and parole revocation. Speaking for the court Justice Jacobs said:
In Morrissey the Court, in distinguishing parole release from parole revocation, quoted approvingly from Bey v. Connecticut Bd. of Parole, 443 F.2d 1079 (2 Cir.), vacated with directions to dismiss as moot, 404 U.S. 879, 92 S.Ct. 196, 30 L.Ed.2d 159 (1971), where Judge Kaufman voiced the thought that "it is not sophistic to attach greater importance to a person's justifiable reliance in maintaining his conditional freedom so long as he abides by the conditions of his release, than to his mere anticipation or hope of freedom." 443 F.2d at 1086. In Bey the second circuit held that a parolee is entitled to counsel at a parole revocation hearing, though the same circuit had less than a year earlier held in Menechino [v. Oswald, 2 Cir.], supra, 430 F.2d 403, that there was no constitutional *184 right to counsel at a parole release hearing. Recognition of the right to counsel at a revocation hearing will not impair prison discipline or burden the parole release process and consequently there is nothing inconsistent in requiring counsel in parole revocation proceedings, while at the same time permitting parole release proceedings to remain largely unfettered. [at 364]
When dealing with the interests involved in rescission the same analysis can be made. There is only an anticipation of freedom as opposed to an actual realization of it. Further, since the prisoner is still confined, any such proceeding can have an effect on prison discipline. From these facts alone we begin to see that rescission hearings cannot be placed in the same category as revocation proceedings.
In the same vein, in Menechino v. Oswald, 430 F.2d 403, 408 (2 Cir.1970), cert. den. 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971), the Second Circuit noted that the type of interest protected by procedural due process is usually one "presently enjoyed" and that the inmate there involved in a parole release hearing "does not presently enjoy freedom of movement beyond the prison walls."
The Morrissey court itself emphasized the "core values of unqualified liberty" of one actually on parole who may be facing revocation and characterized it as being "very different from that of confinement in a prison." Morrissey, 408 U.S. at 482, 92 S.Ct. at 2601. Since the prisoner facing rescission is not at liberty, he does not have an interest as great as one who is on parole and facing revocation proceedings. Therefore something less than the Morrissey protections are appropriate.
We conclude that the governmental function involved and the interests of the prisoner affected in a rescission are strongly analogous to those involved in a prison disciplinary proceeding. We have said that some aspects of a parole decision itself are akin to the rescission process. As to the former it has been said that
In the last analysis the Board's determination as to whether a prisoner is a good parole risk represents an aspect of prison discipline, *185 not an adjudication of rights in an adversary proceeding. Rose v. Haskins, 388 F.2d 91 (6 Cir.1968). [Menechino v. Oswald, supra at 412]
So, too, the decision whether to release an inmate on a projected date is an aspect of prison discipline and represents an exercise of the right of the authorities to govern prisons and their inmates. In Jackson v. Wise, supra, it was said: "There is no legally significant distinction between the cancellation of earned good time and the cancellation of an established parole release date." 390 F. Supp. at 21. We agree.
Since the interests in a rescission proceeding are akin to those in a disciplinary proceeding, we conclude that only the due process rights ordained for the latter in Wolff v. O'Donnell, and Baxter v. Palmigiano, supra, are appropriate here. Those cases expressly rejected mandating confrontation of witnesses in the disciplinary context. As said in Baxter, to do so "effectively preempts the area that Wolff left to the sound discretion of prison officials." 425 U.S. at 322, 96 S.Ct. at 1560. We, too, would leave the right of confrontation in a rescission hearing to the discretion of the prison officials.
Apart from the constitutional implications here, there are other considerations supporting the denial of confrontation under these circumstances. We take notice of the impact upon the criminal justice system that would have occurred if O'Neal had been given the right of confrontation and cross-examination of the witnesses at the time of the parole rescission hearing. It is apparent that to compel those witnesses to testify before the disposition of the criminal charges against O'Neal would not only be an extra burden upon them but might well dissuade them from cooperating with the State in the trial upon the criminal indictment. In some situations, especially in cases involving violent crimes, there may be an apprehension on the part of complaining witnesses to testify. To compel them to do so at a rescission hearing as well as the criminal trial creates *186 a serious impediment to the State's efforts in enforcing the criminal laws.
Implicit in appellant's complaint of lack of confrontation of the witnesses is his further contention that the Board erred in relying upon the police report which indicated that the witnesses had identified O'Neal as a participant in the robbery. Use of the police reports is not improper. In fact in Morrissey, the court recognized that even revocation proceedings should be flexible enough to consider evidence "including letters, affidavits, and other material that would not be admissible in an adversary criminal trial." 408 U.S. at 489, 92 S.Ct. at 2604. Further, Gagnon v. Scarpelli, 411 U.S. 778, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973), pointed out that Morrissey did not "intend to prohibit use where appropriate of the conventional substitutes for live testimony * * *." 411 U.S. at 782, 93 S.Ct. at 1760, n. 5.
We recognize that in New Jersey fulfillment of the constitutional due process requirements may not be enough to affirm the validity of a procedural practice of an administrative agency. In exercising their function of review, New Jersey courts must also strike down any arbitrary action or administrative abuse which undermines procedural "fairness" in the administrative process. Avant v. Clifford, supra, 67 N.J. at 520. Because of this extra protection afforded citizens of our State, our Supreme Court in Avant held that in prison disciplinary proceedings the disciplinary authority must state its reasons in writing for denial of the opportunity for confrontation and cross-examination in those cases where the authority deems those opportunities to be "[un]necessary for an adequate presentation of the evidence." Id. at 532. Our Supreme Court made this determination in spite of the acknowledged fact that this procedure is not required by Wolff. However, as we read Avant, this does not mean that O'Neal was entitled to a written declaration of the Board's reasons for denying him the opportunity for confrontation in this case.
*187 We note that in setting down the standard for this right, the court in Avant cited Clutchette v. Procunier, 510 F.2d 613, 616 (9 Cir.1974), modifying 497 F.2d 809 (9 Cir.1974), as authority for this proposition. The cited Clutchette decision (reversed on other grounds)[2] specifically stated:
Whenever a prisoner requests and is denied the privilege of confrontation and cross-examination in a disciplinary proceeding in which a serious sanction can be imposed (excluding a proceeding for an infraction that is also a crime), the prison authorities must enter in the record of the proceeding and make available to the prisoner an explanation for the denial. [Id. at 616; emphasis supplied]
From this we conclude that, even under the cited Clutchette decision, neither prison disciplinary authorities nor the Parole Board dealing with rescission matters is bound to give a written statement explaining its negative response to a request for confrontation and cross-examination when a crime is alleged, as in this case. It is obvious that the infringement on the criminal process which such a procedure would entail warrants the curtailment of this right in the rescission setting.
This, of course, means that the right to a written reply to a request for confrontation and cross-examination should not be curtailed in those cases where no criminal proceeding is expected to take place. Cf. Morrissey, supra, 411 U.S. at 479, 92 S.Ct. 2593. But this is not the case here. The infraction with which O'Neal was charged was a crime and therefore comes within the exception discussed above. In spite of the fact that the case was dismissed after the arraignment, the matter was referred to the grand jury, and an indictment was handed down. Criminal proceedings *188 were pending and did take place. Therefore we conclude that appellant did not have the right to a written reply to his request for confrontation as set down in Avant.
Our review of the record indicates to us that O'Neal has been afforded all the due process protections delineated in Wolff and Baxter. For that reason we affirm the determination of the Board which rescinded his parole release date of November 18, 1975.
NOTES
[1] For an explanation that the dismissal which was there reversed was on the ground of mootness, see the decision of the Appellate Division on remand at 128 N.J. Super. 140, 143 (1974).
[2] 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976). The ground for the reversal was that the Ninth Circuit Court of Appeals, by requiring the prison authority to state its reason for denial of confrontation, misapplied the requirements of Wolff.