192 N.J. Super. 85 (1983)
469 A.2d 88
IN RE PAROLE APPLICATION OF WILLIAM HAWLEY.
Superior Court of New Jersey, Appellate Division.
Argued September 28, 1983.
Decided November 23, 1983.
*87 Before Judges MATTHEWS, J.H. COLEMAN and GAULKIN.
William J. Zaorski, Assistant Prosecutor, argued the cause for appellant Monmouth County Prosecutor (Charles R. Buckley, Acting Monmouth County Prosecutor, attorney; Alexander D. Lehrer, former Monmouth County Prosecutor, of counsel; Paul F. Jannuzzo and James W. Kennedy, Assistant Prosecutors, on the brief).
Catherine M. Brown, Deputy Attorney General, argued the cause for respondent State Parole Board (Irwin I. Kimmelman, Attorney General, attorney; James J. Ciancia, Assistant Attorney General, of counsel).
Leigh B. Bienen, Assistant Deputy Public Defender, argued the cause for respondent William Hawley (Joseph H. Rodriguez, Public Defender, attorney).
The opinion of the court was delivered by GAULKIN, J.A.D.
The Monmouth County Prosecutor appeals from a July 5, 1983 decision of the State Parole Board (Board) granting respondent *88 William Hawley parole from Trenton State Prison, where he is presently serving a sentence of life imprisonment. We are asked not only to rule on the propriety of the parole release decision but also to determine whether that decision is appealable by the prosecutor and whether the prosecutor is entitled to a statement of reasons for the decision.
Hawley pleaded non vult to murder on July 6, 1967 and was sentenced to state prison "for the rest of his natural life." In early 1983 the Board gave public notice that it would conduct a parole eligibility hearing. N.J.S.A. 30:4-123.45(b)(5); N.J.S.A. 30:4-123.48(g). The prosecutor filed a timely request to attend the hearing in order to "produce witnesses and/or evidence and argue orally against Hawley's parole." See In re Trantino Parole Application, 89 N.J. 347, 376 (1982). The request, however, was mislaid and a hearing was conducted without notice to the prosecutor. On March 31, 1983 the Board gave notice that parole release had been approved effective May 10, 1983.
When the Board learned of its oversight, it suspended that release date and directed that an informational hearing be held. Hearings were conducted on May 4 and June 15, 1983. Written summaries of the hearings were prepared by the hearing officer and made available to the parties. The prosecutor submitted written exceptions to the information presented by Hawley at the second hearing.
By notice dated July 5, 1983 the Board again approved parole release, now effective July 19, 1983. The prosecutor immediately dispatched a mailgram to the Parole Board in which he made "demand" for a "written statement of reasons for Hawley's parole release" and requested that the parole release date be stayed "until we receive such statement." The Board responded by letter of July 14 that it was "not legally required by statute or administrative regulations to provide a statement of reasons as to why parole is granted," that "the Board sees no reason why the parole release date should be suspended" and that both the demand and request of the mailgram were therefore denied.
*89 The prosecutor then filed his notice of appeal to this court together with a motion for stay pending appeal. We denied the stay motion, but on the prosecutor's application the Supreme Court stayed Hawley's release pending appeal and directed that we accelerate the matter.

I
The prosecutor assumes, but does not expressly argue, that a parole grant is a judicially reviewable administrative determination; and neither Hawley nor the Board disputes that this court has jurisdiction to review a parole release decision. The Board is an administrative agency, created and established within the Department of Corrections, N.J.S.A. 30:4-123.47, whose actions are reviewable in this court to insure that the discretionary powers delegated by the legislature are not exercised arbitrarily or capriciously. See N.J. Const. (1947), Art. VI, § 5, par. 4; R. 2:2-3(a)(2); In re Senior Appeals Examiners, 60 N.J. 356, 363 (1972). As Justice Jacobs stated in Monks v. N.J. State Parole Bd., 58 N.J. 238, 242 (1971), "... the Board's actions are always judicially reviewable for arbitrariness."
Both Hawley and the Board nevertheless urge that we not entertain the prosecutor's appeal. Hawley contends that the prosecutor does not have "authority to appeal" a parole release decision. The Board does not question the authority of the prosecutor, but argues that as a matter of "judicial accommodation" we "should refrain from reviewing challenges to parole release decisions which are brought by a third party when the sole basis of the challenge on appeal is that the decision the Board reached on the merits is incorrect." We find neither of these suggested limitations on our review to be persuasive.
The contention that the prosecutor has no "authority" to appeal a parole release decision conflicts with the reasoning of In re Trantino Parole Application, supra. Proceeding from the fact that N.J.S.A. 30:4-123.45(b)(5) requires notice of parole consideration to be given to the appropriate prosecutor, the *90 Attorney General and any other criminal justice agencies whose information and comment may be relevant, Trantino held that those parties must be given the opportunity to participate in parole eligibility hearings:
Because the Board's objective is to reach a reasoned and informed determination, it should permit the participation of parties and witnesses who can bring relevant evidence to bear upon the parole question. The Legislature has already indicated that the prosecutor can perform a special role in parole proceedings. See N.J.S.A. 30:4-123.51(j) (giving prosecutor the right to defer the parole release of a pre-Code sentenced inmate who is a repeat offender whenever the prosecutor advises the Board that the punitive aspects of the inmate's sentence have not been satisfied). Those persons required by statute to be notified of parole proceedings, such as the Attorney General or county prosecutor, are parties familiar with the offender and the offense and can be helpful in the parole proceedings. Their role is to inform the Board. Such persons, upon request and subject to the discretion and control of the Parole Board, should be allowed to submit evidence, to give testimony, examine and cross-examine witnesses, and present argument on all matters directly relevant to the parole of the inmate. [89 N.J. at 375-376].
By pressing this appeal the prosecutor is not attempting, as Hawley contends, to "redefine and expand his role" in the parole process or to "countermand" the parole grant. The prosecutor merely asserts his right to challenge the release determination. As a matter of logic and common sense, his "special role in parole proceedings," recognized in Trantino, must comprehend as well his right to seek judicial review.
The Board itself acknowledges that the prosecutor has standing to appeal its release decisions. Cf. Crescent Pk. Tenants Ass'n v. Realty Eq. Corp. of N.Y., 58 N.J. 98, 107-108 (1971). But it argues that the "overriding governmental objective" of assuring that parole decisionmaking is "consistent, certain and efficient" should lead us to "accommodate" the Board by refraining from reviewing parole release decisions on appeal of third parties when the sole basis of the appeal is a challenge to the Board's decision on the merits. The essence of the argument is that judicial review would only determine whether the Board gave due consideration to all relevant factors, see O'Neal v. N.J. State Parole Bd., 149 N.J. Super. 174, 182 (App.Div.), app. dism. 75 N.J. 590 (1977), that the informational hearing described *91 in Trantino "functions as a check on abuse of the Board's decisionmaking power," that any release decisions will "necessarily be based upon due consideration of all relevant evidence," that "the informational hearing process would accomplish the same purpose as judicial review" and that the availability of judicial review would transform parole proceedings into "sensational adversarial contests" contrary to the aim of Trantino.
We recognize, of course, our obligation to participate with the legislative and executive branches in assuring that the Parole Act of 1979 is effectively implemented. Cf. Knight v. Margate, 86 N.J. 374, 388 (1981). We also acknowledge that judicial review can make the parole process more adversarial, less certain and less prompt. But we are not satisfied that those possibilities warrant our limiting judicial review in the manner suggested by the Board.
By its very nature the availability of judicial review always means the possibility of more litigation, delay and uncertain outcomes. But the Board has pointed to no case in which review has been barred or strictured on any such grounds. Indeed, in In re Senior Appeals Examiners, supra, where the Attorney General "urge[d] that ... pertinent practical considerations" militated against judicial review of a Civil Service Commission decision, the Supreme Court flatly rejected the argument:
... we fail to see how [those practical considerations] may justly be invoked to preclude appellants from seeking relief on the basis of affirmative showings of administrative arbitrariness or abuse. [60 N.J. at 367].
We find nothing about the obligations or operations of the Parole Board to warrant restricting our review of its decisions. Fair and reasonable accommodation of the interests of all parties to the parole process is assured by the established limitation of our review to arbitrariness or abuse in administrative conduct. Id. at 367-368; Monks v. N.J. State Parole Bd., supra, 58 N.J. at 242.

II
The prosecutor argues that where he has participated in an informational hearing he is "entitled" to a "statement of *92 reasons" from the Board in support of any decision to release. Without such an expression from the Board, he contends, meaningful judicial review is "nearly impossible." We decline to impose such an obligation on the Board.
The Parole Act of 1979 certainly does not accord the prosecutor any right to be advised of the reasons for any parole release. Indeed N.J.S.A. 30:4-123.55(d) suggests a legislative determination that the Board shall not be required to articulate reasons for parole release, for it requires "particular reasons" to be given only where parole is denied. Nor does the holding in Monks v. New Jersey State Parole Bd., supra, relied upon by the prosecutor, entitle him to demand reasons for a parole release. In Monks the Board was required to furnish reasons for denial of parole as a matter of fairness and in order to permit an inmate to "be guided in connection with his future conduct and with his forthcoming parole rehearing...." 58 N.J. at 244. Although Monks was not decided on constitutional grounds, Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 99 S.Ct. 2100, 60 L.Ed.2d 668 (1979), later held that the right to a statement of reasons why parole was denied is of constitutional dimension. See also N.J. Parole Bd. v. Byrne, 93 N.J. 192 (1983).
None of the considerations which thus mandate that an inmate be given reasons for parole denial support the contention that the prosecutor should be entitled to reasons for a parole grant. We recognize, of course, that our case law has often pointed out "the need for suitable expression of the controlling findings or reasons" for administrative action. Monks, 58 N.J. at 244. But we find compelling reasons not to impose upon the Board any fixed obligation to give reasons in support of its parole release determinations.
The parole release decision is highly subjective. Its nature was well described by Chief Justice Burger in Greenholtz v. Nebraska Penal Inmates, supra:
The parole-release decision ... is more subtle and depends on an amalgam of elements, some of which are factual but many of which are purely subjective appraisals by the Board members based upon their experience with the difficult *93 and sensitive task of evaluating the advisability of parole release. Unlike the revocation decision, there is no set of facts which, if shown, mandate a decision favorable to the individual. The parole determination, like a prisoner-transfer decision, may be made
"for a variety of reasons and often involve[s] no more than informed predictions as to what would best serve [correctional purposes] or the safety and welfare of the inmate." Meachum v. Fano, [427 U.S. 215] at 225, 49 L Ed 2d 451, 96 S Ct 2532 [at 2538].
The decision turns on a "discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done." Kadish, The Advocate and the Expert  Counsel in the Peno-Correctional Process, 45 Minn L Rev 803, 813 (1961). [442 U.S. at 9-10, 99 S.Ct. at 2105].
The Parole Act of 1979 is designed to "reduce the discretion involved in parole decisions" by fixing "a much narrower standard for determining an inmate's fitness for parole." Trantino, supra, 89 N.J. at 368, 355. N.J.S.A. 30:4-123.53(a) "effectively establishes a presumption in favor of parole" (Trantino, supra, 89 N.J. at 356):
(a) An adult inmate shall be released on parole at the time of parole eligibility, unless information supplied in the report filed pursuant to [N.J.S.A. 30:4-123.54] or developed or produced at a hearing held pursuant to [N.J.S.A. 30:4-123.55] indicates by a preponderance of the evidence that there is a substantial likelihood that the inmate will commit a crime under the laws of this State if released on parole at such time. In reaching such determination, the board panel or board shall state on the record the reasons therefor.
Where, as here, an inmate has been sentenced prior to the enactment of the Code of Criminal Justice, the Board also "must consider whether the punitive aspects of a sentence have been satisfied in terms of the rehabilitative potential of the inmate." Id. at 373. The determination whether an inmate meets these criteria is an aspect of "prison discipline, not an adjudication of rights in an adversary proceeding." Menechino v. Oswald, 430 F.2d 403, 412 (2d Cir.1970), cert. den. 400 U.S. 1023, 91 S.Ct. 588, 27 L.Ed.2d 635 (1971), quoted with approval in O'Neal v. N.J. State Parole Bd., supra, 149 N.J. Super. at 184-185. In that process the role of the prosecutor is not as an adversary but "to inform the Board." Trantino, supra, 89 N.J. at 376.
Given the nature of the parole release decision, any requirement that the Board submit "reasons" to the prosecutor would *94 be unnecessary and inappropriate. To the extent that parole release is based on the presumption in favor of parole found in N.J.S.A. 30:4-123.53(a), the statute itself furnishes the "reasons": the "reason" for release is that the Board finds no reason not to release. To the extent that release of a pre-Code inmate is based on its judgment that "the punitive aspects of [the] sentence have been satisfied," the Board should not be obligated to justify itself to a local prosecutor as a condition of exercising its statutory authority.
The prosecutor has the right and the authority to challenge any parole release decision, but in doing so he must accept the burden of making a clear and convincing showing of abuse of discretion. O'Neal v. N.J. State Parole Bd., supra, 149 N.J. Super. at 182. His ability to make such a showing is not substantially impaired by the absence of reasons from the Board. The Board may, if it chooses, articulate its reasons for a parole release grant; indeed, where the Board is divided, we anticipate that its differences will be expressed. See Trantino, supra, 89 N.J. at 374 n. 8. And, of course, any reviewing court can require a statement of reasons from the Board if necessary for a fair and full resolution of any appeal. See Amato v. Randolph Tp. Planning Bd., 188 N.J. Super. 439, 453 (App.Div. 1982); Castellucci v. Board of Review, 168 N.J. Super. 301, 310 (App.Div. 1979); St. Vincent's Hosp. v. Finley, 154 N.J. Super. 24, 30 (App.Div. 1977). But the Board is not required to provide reasons upon the prosecutor's "demand."

III
We are satisfied that the Board's decision to grant parole release in this matter was neither arbitrary nor capricious. Hawley was 19 years old when he was sentenced and is now 35. He entered the institution with an eighth-grade education and has now earned his GED and an Associate of Arts degree. Although in the early part of his incarceration Hawley was guilty of institutional infractions, he later earned the trust of *95 prison officials and was granted minimum security status in 1978. He relinquished that privilege to learn electrical repair work and was again given minimum security status in 1982. He is now in charge of electrical maintenance at the prison on nights and weekends and has free run of the prison for that purpose. Before undertaking that assignment Hawley was the prison superintendent's houseman and took care of the superintendent's children and their pets.
While in prison, Hawley participated in group therapy and counseling programs. One of his therapists is sufficiently persuaded of his rehabilitation that he has arranged to have Hawley live with him upon his parole. The Board regards his parole plan to be excellent.
The prosecutor nevertheless contends, as he did in the informational hearing, that Hawley "committed the most heinous and reprehensible crime known to a civilized society," that under the present Code his offense would have resulted in a sentence of at least 30 years without parole, N.J.S.A. 2C:11-3(b), (c), that the sentence of life imprisonment "was intended to protect the unwary public from his commission of another needless and brutal murder" and that his release after he has served "a mere 16 years" would fall short of satisfying the punitive aspects of his original sentence. The prosecutor also notes the various institutional infractions which were charged against Hawley during the course of his incarceration.
The matters thus urged by the prosecutor are unquestionably relevant to the parole release decision. But they do not constitute any clear or convincing showing that the parole release decision was arbitrary or capricious. O'Neal v. N.J. State Parole Bd., supra, 149 N.J. Super. at 182. We find no reason to conclude that the decision of the Parole Board was anything other than a proper exercise of the discretion entrusted to it.
The decision of July 5, 1983 is accordingly affirmed.