221 N.J. Super. 442 (1987)
534 A.2d 1037
ANDREW GERARDO, PLAINTIFF-APPELLANT,
v.
NEW JERSEY STATE PAROLE BOARD, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued November 10, 1987.
Decided December 9, 1987.
*444 Before Judges PRESSLER, MUIR Jr. and CONLEY.
Angelo R. Bianchi, argued the cause for appellant (Angelo R. Bianchi on the brief).
Stuart J. Lieberman, Deputy Attorney General, argued the cause for respondent (W. Cary Edwards, Attorney General of New Jersey, attorney; Michael R. Clancy, Deputy Attorney General, of counsel).
CONLEY, J.S.C. temporarily assigned.
This is an appeal from a parole rescission order by the State Parole Board based on its finding of substantial likelihood appellant would commit a crime if paroled.
Appellant is serving a 7 1/2 to 11 year sentence for conspiracy, engaging in a lottery business and bookmaking. He began serving his sentence in 1984. An initial parole hearing was held in June 1986. The matter was referred to the Adult Panel of the Parole Board to consider his involvement in organized crime and criminal activity. In July 1986 he met with the Panel following which he was approved for parole, effective October 7, 1986. On September 25, 1986, however, he was arrested on a criminal complaint alleging conspiracy and racketeering. On October 1, 1986, an administrative hold was placed on his release pending a hearing to determine whether the charges constituted good cause to reconsider the parole release. In *445 November an inquiry was made of appellant's counsel concerning scheduling of the hearing. He advised he would not be available December 4 or 5 since he had a previously scheduled trial with twelve witnesses.
A hearing was held on December 12, 1986, 65 days after the release date. The only witness was a State Police detective, an expert in organized crime assigned to the State Police Organized Crime and Racketeering Task Force. He testified concerning an investigation of criminal activity in northern New Jersey and certain intercepted prison conversations which occurred on March 12, 1986 between appellant and another individual, Ralph Vicarro, suspected to be involved in the criminal activity. Neither tape nor transcript of the critical conversations was presented.[1] The detective's testimony concerning the March 12 conversations was predominantly conclusory and interpretative. It was his opinion that the conversations demonstrated appellant's activity with others in loan sharking and gambling. Although the hearing officer repeatedly expressed a need for substantiation of conclusions and surmise, the actual words of the critical conversations were not recounted. However, based upon the interpretive testimony of the detective, the Board concluded it was likely appellant would continue with loan sharking and gambling activities upon release. His parole release was rescinded and he was given a 26-month future eligibility term.
On appeal appellant argues he was denied due process because the hearing occurred beyond the 60 day statutory time limit, that the Board's decision was arbitrary because it was based solely on hearsay and that he was improperly denied discovery of the transcript of the critical conversations.
*446 We find the discovery contention to be clearly without merit. R. 2:11-3(e)(1)(E). The simple answer is that appellant received by way of the detective's 140-page arrest warrant affidavit all that he was entitled to. Since neither the transcript nor the content of the conversations was "considered at the hearing", N.J.A.C. 10A:71-5.7(a), appellant was not entitled to such discovery. And, for the following reasons, we reject the due process and hearsay contentions. But our concern regarding the reliability of the State's evidence leads us to remand for further proceedings.
We begin by recognizing that there is no constitutional right to parole. Greenholtz v. Nebraska Penal Inmates, 442 U.S. 1, 7, 99 S.Ct. 2100, 2104, 60 L.Ed.2d 668, 675 (1979); N.J. Parole Bd. v. Byrne, 93 N.J. 192, 208 (1983). See Jago v. Van Curen, 454 U.S. 14, 102 S.Ct. 31, 70 L.Ed.2d 13 (1981) (parole rescission without a hearing where none is required by statute does not violate due process). While inmates are statutorily entitled to be released upon parole eligibility, the Parole Board may deny or delay parole and, prior to actual release, may rescind an initial parole determination. It may do so if information is provided to it either through the preparole report prepared pursuant to N.J.S.A. 30:4-123.54 or through a hearing held pursuant to N.J.S.A. 30:4-123.55(c) which demonstrates by a preponderance of the evidence that there is a substantial likelihood the inmate will commit a crime if released on parole. N.J.S.A. 30:4-123.53; N.J.S.A. 30:4-123.56(c); N.J.S.A. 30:4-123.58(c). But it can no longer be subject to question that the expectation of parole eligibility, however qualified it might be, created by the Parole Act is a liberty interest of the inmate entitled to be protected from arbitrary governmental action by the due process clause of the Fourteenth Amendment. N.J. Parole Bd. v. Byrne, supra, 93 N.J. at 206, 208. See also N.J. State Parole Bd. v. Woupes, 184 N.J. Super. 533, 536-537 (App.Div. 1981); O'Neal v. N.J. State Parole Bd., 149 N.J. Super. 174, 184-185 (App.Div. 1977), app. dism. 75 N.J. 590 (1977). Cf. Jenkins v. Fauver, 108 N.J. 239, 246-250 (1987).
*447 In this respect and pertinent to this appeal, N.J.S.A. 30:4-123.58(c) provides:
"If information comes to the attention of the appropriate board panel which bears upon the likelihood that the inmate will commit a crime but which was not considered pursuant to [N.J.S.A. 30:4-123.55 to N.J.S.A. 30:4-123.57], the board panel may suspend any parole release date ... for a period of not more than 60 days in order to conduct a rescission hearing to determine whether parole release on the original parole release date should be denied or delayed." (emphasis added).
In implementing this statutory entitlement to a hearing, the Board has promulgated N.J.A.C. 10A:71-5.6 which provides:
(a) Upon the receipt of additional relevant information which may form a basis for parole rescission, the Board panel shall schedule a rescission hearing before the Board panel or a hearing officer.
(b) The purpose of the rescission hearing shall be to determine whether, due to circumstances of an institutional infraction committed by such inmate and/or due to circumstances of the inmate's case which were not previously considered, there is good cause for the Board panel to reconsider the prior determination certifying parole release.
(c) Upon the initiation of the rescission hearing process, the parole release date shall be suspended for a period of not more than 60 days, and within said time period, a rescission hearing shall be conducted unless the inmate requests a postponement of the rescission hearing.
(d) If the inmate requests a postponement of the rescission hearing, the postponement shall be granted by the hearing officer or Board panel. Such request shall be made in writing and shall be made a part of the inmate's case record.
Thus, while a parole release date may be rescinded, both the statute and the Parole Board's own regulation provide for a hearing at which the evidence bearing upon rescission is to be presented. The hearing is to be held within 60 days of the release date.
Appellant contends the 60 days is mandatory and is part of his due process rights arising from his protected liberty interest. He thus claims that a five-day infringement upon that right requires automatic release regardless of whether there is a preponderance of evidence demonstrating likelihood of criminal activity. It is, as characterized in the context of an untimely revocation hearing, a "draconian" remedy. Smith v. U.S., 577 F.2d 1025, 1028 (5th Cir.1978). We reject it.
*448 As we have noted, there is no question but that due process applies to parole eligibility decisions. However, parole is not a part of criminal prosecution and thus the full panoply of rights accorded a criminal defendant is not applicable. Morrissey v. Brewer, 408 U.S. 471, 480, 92 S.Ct. 2593, 2600, 33 L.Ed.2d 484, 494 (1972). See also Greenholtz v. Nebraska Penal Inmates, supra, 442 U.S. at 14, 99 S.Ct. at 2107, 60 L.Ed.2d at 679-680. It has consistently been recognized that the concept of due process is elusive and flexible with the procedural protections required depending upon the particular circumstances involved. Hewitt v. Helms, 459 U.S. 460, 472, 103 S.Ct. 864, 871, 74 L.Ed.2d 675, 688 (1983); N.J. Parole Bd. v. Byrne, supra, 93 N.J. at 209. Thus, what process is due in any given case requires a weighing of the particular governmental function and the individual interest affected. N.J. Parole Bd. v. Byrne, supra, 93 N.J. at 209.
Important, too, in determining what procedures must accompany governmental action is consideration of the primary purpose for due process protection. It has been said that "[t]he touchstone of Due Process is freedom from arbitrary governmental action." Ponte v. Real, 471 U.S. 491, 495, 105 S.Ct. 2192, 2195, 85 L.Ed.2d 553, 558 (1985). As explained in Greenholtz v. Nebraska Penal Inmates, supra, 442 U.S. at 13, 99 S.Ct. at 2106, 60 L.Ed.2d at 679:
"... The function of legal process, as that concept is embodied in the Constitution, and in the realm of fact finding, is to minimize the risk of erroneous decisions. Because of the broad spectrum of concerns to which the term must apply, flexibility is necessary to gear the process to the particular need; the quantum and quality of the process due in a particular situation depend upon the need to serve the purpose of minimizing the risk of error ..." (emphasis added).
See also N.J. Parole Bd. v. Byrne, supra, 93 N.J. at 211.
Thus, in the context of initial parole eligibility determinations, the United States Supreme Court in Greenholtz acknowledged the inmates' statutory expectation of parole but weighing such interest against the subjective/predictive nature of parole release determination and recognizing there exists no ideal, errorfree *449 way to make such decision, held no more than notice, opportunity to be heard and a statement of reasons was required. 422 U.S. at 16, 99 S.Ct. at 2108, 60 L.Ed.2d at 681. Similar considerations led the New Jersey Supreme Court in N.J. Parole Bd. v. Byrne, supra, 93 N.J. at 210-211, to conclude that "[o]nly a few, basic procedures" were required "to deal with the risks of erroneous or arbitrary determinations" in the context of determining parole advanced eligibility dates under the Parole Act of 1979 for multiple offenders sentenced prior to that Act. Such procedures are notice of a pending parole disposition, written statement of reasons by the objecting judge or prosecutor and the opportunity to respond in writing. 93 N.J. at 211.
A rescission determination concerns liberty interests that are greater than those involved in an initial eligibility determination. They are less, however, than those involved in parole revocation. We have considered the governmental function and societal interests to be analogous to those involved in prison disciplinary actions. O'Neal v. N.J. State Parole Bd., supra, 149 N.J. Super. at 185. We thus have rejected the more substantial procedures required for parole revocations (Morrissey v. Brewer, supra, 408 U.S. at 489, 92 S.Ct. at 2604, 33 L.Ed.2d at 499), and have held due process requires procedures similar to those applicable in prison disciplinary actions (Wolff v. McDonnell, 418 U.S. 539, 563-565, 94 S.Ct. 2963, 2978-2979, 41 L.Ed.2d 935, 955-956 (1974)). Such procedures are advance notice of the basis for the rescission, a fair hearing, and a statement of reasons for rescission. O'Neal v. N.J. State Parole Bd, supra, 149 N.J. Super. at 185. Thus, N.J.A.C. 10A:71-5.7 governing parole rescission hearing provides:
(a) Upon the initiation of the rescission hearing process, the Board panel shall provide the inmate with written notification of the reasons for the hearing, the purpose of the hearing and the information and material to be considered at the hearing, except information classified as confidential pursuant to N.J.A.C. 10A:71-2.1 or the rules and regulations of the Department.
(b) Such notification shall inform the inmate of the following rights to which he or she shall be entitled at the rescission hearing:

*450 1. The right to appear and speak in his or her own behalf and to be aided by an interpreter if such aid is determined to be necessary by the hearing officer.
2. The right to be represented by an attorney or other qualified person.
3. The right to remain silent.
4. The right to present witnesses to testify in his or her behalf as to matters relevant to the hearing in accordance with N.J.A.C. 10A:71-2.4.
5. The right to present documentary evidence and any other relevant material or information to the hearing officer.
6. The right to confront and cross-examine adverse witnesses upon request, unless the hearing officer determines that such witnesses would be subjected to risk of harm.
7. The right to waive such hearing.
8. The right to disclosure of adverse information except as provided in N.J.A.C. 10A:71-2.1 or the rules and regulations of the Department.
There has been no contention here that, except for discovery which we have previously addressed, the hearing did not comply with these procedures. Appellant has cited no authority for the proposition that in addition to these procedures he has a right to automatic release when the rescission hearing is held 65 days, as opposed to 60 days, after initial release date. As we previously observed, the primary purpose for due process protection is to minimize the risk of erroneous or arbitrary decisions. Greenholtz v. Nebraska Penal Inmates, supra, 442 U.S. at 13, 99 S.Ct. at 2106, 60 L.Ed.2d at 679; N.J. Parole Bd. v. Byrne, supra, 93 N.J. at 211. Automatic release when the hearing is not timely held does nothing to minimize that risk; indeed it serves only to heighten it where there exists information that would be developed at the hearing demonstrating a probability of continued criminal activity. Such a procedure, moreover, ignores the governmental function involved and fails to recognize that the liberty interest to be protected is release unless information demonstrates likelihood of criminal activity.
And, while the statute permits the Board to suspend a parole release date "for a period of not more than 60 days" in order to conduct a rescission hearing, it does not mandate a release if the hearing is held beyond that date. Even when an inmate is determined to be qualified for parole, N.J.S.A. 30:4-123.55(b) *451 directs the Board to certify release "as soon as practicable after the eligibility date ..." N.J.S.A. 30:4-123.55(e) further provides for a waiver of the time periods applicable to parole eligibility determinations in 123.54 and 123.55. We do not think the Legislature intended a different result for rescissions.
It is, moreover, of some pertinence that in In re Trantino Parole Application, 89 N.J. 347, 363-366 (1982), the court rejected a due process claim and held the Parole Board not only could but must reconsider its parole eligibility decision with no apparent concern over the 60 days requirement. Furthermore, in the related context of prison disciplinary hearings, while Department of Correction regulations establish time constraints for such hearings, the charges are not dismissed if the hearing is not timely. N.J.A.C. 10A:4-9.9. See also Caruth v. Pinkney, 683 F.2d 1044, 1052 (7th Cir.1982), cert. den. 459 U.S. 1214, 103 S.Ct. 1212, 75 L.Ed.2d 451 (1983) (failure of prison officials to comply with 72 hour hearing rule not violative of due process). Accord Perez v. Neubert, 611 F. Supp. 830, 838 (D.N.J. 1985); King v. Hilton, 525 F. Supp. 1192, 1200 (D.N.J. 1981).
Certainly the Board ordinarily should schedule a hearing within 60 days, as it own regulation recognizes. Here, it appears there was an effort to hold a timely hearing and that appellant's counsel's trial schedule may have been a factor. There is no suggestion the delay was unreasonable or that appellant was prejudiced. Under these circumstances, we do not find the five-day delay in the hearing violated appellant's due process rights warranting a reversal on that ground. Cf. Bd. of Trustees of Youth Correct. Cent. v. Davis, 147 N.J. Super. 540, 544 (App.Div. 1977) (pre-parole act revocation hearing 71 days does not require reversal albeit beyond 60 days required by Morrissey). See Smith v. U.S., supra, 577 F.2d at 1028-1029 (holding of parole revocation hearing 20 days beyond 90 days mandated by federal statute does not require release). See also Hanahan v. Luther, 693 F.2d 629, 635 (7th Cir.1982), cert. den. 459 U.S. 1170, 103 S.Ct. 815, 74 L.Ed.2d 1013 (1983) *452 (eight month delay in parole revocation hearing not violative of due process). Accord U.S. v. Miller, 599 F.2d 249, 250 (8th Cir.1979); Beck v. Wilkes, 589 F.2d 901, 903 (5th Cir.1979), cert. den. 444 U.S. 845, 100 S.Ct. 90, 62 L.Ed.2d 58 (1979).
Appellant additionally argues the Board's decision was arbitrary and capricious because it was based entirely upon hearsay, i.e. the critical March 12, 1986 conversations. Preliminarily, we observe that the Board's decision did not rest upon those conversations since they were never part of the record. It was based upon the expert testimony of the detective, including his interpretation of the conversations. And, had the conversations been presented at the hearing, appellant's statements would have been competent hearsay pursuant to Evid.R. 63(7), and, arguably, Ralph Vicarro's statements competent hearsay pursuant to 63(10).
Assuming the Board's decision to have been based entirely upon hearsay, we reject appellant's argument that it is thereby defective. His contention assumes the "residuum evidence" rule, Weston v. State, 60 N.J. 36, 51 (1972), is applicable to Parole Board decisions. But N.J.S.A. 30:4-123.55(c), applicable to rescission hearings (N.J.S.A. 30:4-123.56(c), permits the use of "any relevant and reliable documents or testimony" and further provides that the decision may be based on that evidence. While we recognize this language is not as explicit as a similar provision in the Casino Control Act, N.J.S.A. 5:12-107(a)(6) (see Depart. of Law & P. Saf. v. Merlino, 216 N.J. Super. 579, 585 (App.Div. 1987)), it nonetheless reflects legislative awareness and acceptance of the fact that, of necessity, evidence at parole hearings is frequently hearsay by nature. This is so because the Board's parole decisions are often highly predictive and subjective. Beckworth v. N.J. Parole Bd., 62 N.J. 348, 358-59 (1973). They are dependent upon information obtained from various files, documents, records, and other materials and sources. See for example N.J.A.C. 10A:71-3.7; N.J.A.C. 10A:71-3.46. In addition some of the information may *453 be highly confidential. N.J.A.C. 10A:71-2.1; Thompson v. N.J. State Parole Bd., 210 N.J. Super. 107 (App.Div. 1986).
In the related context of prison disciplinary decisions, we have recently rejected the application of the "residuum evidence" rule, noting the unique problems involved in prison discipline. Negron v. Department of Corrections, 220 N.J. Super. 425 (App.Div. 1987). By virtue of the nature of parole decisions and the information the Board must be able to rely on, we think similar problems attend parole decisions. We thus conclude the "residuum evidence" rule does not apply to such decisions. See O'Neal v. N.J. State Parole Bd., supra, 149 N.J. Super. at 186 (Board's reliance on hearsay police reports upheld).
Although we reject appellant's hearsay argument, we are troubled by the nature of the evidence presented. We do not question the expertise of the State's witness. We are, however, concerned because his opinion is premised upon conversations which were not presented to the Board. As previously stated, N.J.S.A. 30:4-123.55(c) requires that evidence produced at the hearing be not only relevant, but reliable. The requirement of relevancy and reliability was not contained in the Parole Act of 1948. When that Act was repealed and replaced by the Parole Act of 1979, relevancy and reliability became part of the Legislature's efforts to ensure that what was perceived to have been an arbitrary and unfair parole system would be governed by more objective standards. Cf. N.J. Parole Bd. v. Byrne, supra, 93 N.J. at 213; In re Trantino Parole Application, supra, 89 N.J. at 360 (goal of the Parole Act to make the parole process more "consistent, predictable, objective and efficient").
A similar requirement of reliability has been imposed in prison disciplinary hearings where confidential information is involved. See Mendoza v. Miller, 779 F.2d 1287, 1293 (7th Cir.1985), cert. den. 476 U.S. 1142, 106 S.Ct. 2251, 90 L.Ed.2d 697 (1986); Dawson v. Smith, 719 F.2d 896, 899 (7th Cir.1983); Kyle v. Hanberry, 677 F.2d 1386, 1390 (11th Cir.1982). See *454 also Langton v. Berman, 667 F.2d 231, 235 (1st Cir.1981) (noting, but not deciding the issue of reliability). Although, in that context the level of reliability need not be high with judicial review deferential, Mendoza v. Miller, supra, 779 F.2d at 1293, and it may be satisfied by in camera review, Henderson v. Carlson, 812 F.2d 874, 880 (3rd Cir.1987).
We agree with the Board that it can, and must be able to, rely upon expert opinion of the type presented here, particularly when the matter deals with wiretapped conversations of people suspected of being involved in such activities as racketeering and gambling. And we find no requirement that either the tape or transcript or both must be presented. But if the actual conversations said to show criminal activity are not presented through such devices the testifying officer should accurately recount them. It is only then that the Board can ascertain the reliability of the evidence. This did not occur here.
The State claims it would have been too burdensome to place the actual conversations on the record. Yet of the 50 page transcript, only 15 pages are relevant. It would be no hardship to have presented that part of the transcript or have the officer simply read the critical portions. The State further argues that disclosure of the conversations would have affected an on-going criminal investigation. Yet this was never asserted at the hearing and the State has not explained how a recounting of the words of the conversation could have interfered with that investigation. Moreover, we note that while the March 12, 1986 conversations were not placed on the record, subsequent conversations on March 19, 1986 were. It is difficult to perceive how the integrity of the criminal investigation was not affected by introduction of the March 19 conversations but would have been by the March 12 conversations. We, thus, reject the State's argument that the Board could not have been presented *455 with the actual words of the critical conversations because of criminal investigation concerns. It is our conclusion that in the context of this case the opinion evidence was not reliable because it lacked any evidence of its underlying foundation.[2]
It remains for us to fashion an appropriate remedy. We are troubled by the position taken by the State at the hearing concerning nonproduction of the March 12 transcript. It reflects either a total disregard for or complete lack of understanding of the fact that it is the Parole Board that is statutorily responsible for independently ascertaining the reliability of the evidence presented. We are additionally concerned that a remand for a second hearing so that the State may present the content of the March 12 conversations and the Board may thereby have the opportunity to independently assess the reliability of the expert testimony, gives the State "a second bite of the apple". Yet we are aware the predominant principle guiding the Parole Act is to ensure that whether or not an inmate is to be released into the community depends solely upon considerations of recidivism. In re Trantino Parole Application, supra, 89 N.J. at 367. Moreover, we note appellant has never asserted that had the March 12 transcript been offered, the Board's decision would have been arbitrary.
We thus are constrained to remand the matter to the Parole Board. A hearing consistent with this opinion should be concluded within 45 days of the date hereof. The Board thereafter should file its decision with the Clerk of this court within 20 days of receipt of the hearing officer's report. A further scheduling order shall thereafter be entered by the Clerk of this court. We retain jurisdiction.
NOTES
[1] A tape and transcript of a conversation on March 19, 1986 between appellant and two other suspects were presented at the hearing but discounted by the Board as irrelevant. We note, moreover, that this tape appeared to be largely inaudible.
[2] We express no view of the application of the reliability requirement where disclosure of the necessary evidence would affect the integrity of an on-going criminal investigation or concern confidential sources. But see Thompson v. N.J. State Parole Bd., supra, 210 N.J. Super. at 126.