**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3623-14T1
          A-2478-16T1

KEVIN STOUT,

    Appellant,

v.

NEW JERSEY STATE PAROLE BOARD,

    Respondent.

_____

Submitted (A-3623-14) September 28, 2016 —
Remanded November 15, 2016

Before Judges Alvarez and Accurso.

Argued (A-3623-14 and A-2478-16) March 12, 2018 -
Decided July 23, 2018

Before Judges Accurso, O'Connor and Vernoia.

On appeal from the New Jersey State Parole
Board.

Pierre Chwang argued the cause for appellant
(Rutgers Constitutional Rights Clinic,
attorneys; Ronald K. Chen, on the brief;
Kevin Stout, on the pro se brief).

Christopher C. Josephson, Deputy Attorney
General, argued the cause for respondent
(Gurbir S. Grewal, Attorney General,
attorney; Melissa Dutton Schaffer and Lisa
A. Puglisi, Assistant Attorneys General, of

counsel; Christopher C. Josephson, on the briefs).

PER CURIAM

In these back-to-back cases, which we have consolidated for purposes of this opinion, Kevin Stout appeals from the February 25, 2015 final decision of the New Jersey State Parole Board denying him parole (A-3623-14), and the Board's January 25, 2017 final decision again denying parole and establishing a future parole eligibility term (FET) of sixty months (A-2478-16). For reasons we explain, we dismiss the appeal in A-3623-14 as moot and affirm the decision in A-2478-16 denying parole and establishing a sixty-month FET.

This case has a protracted and unusual procedural history. The facts, however, are easily summarized. In the course of a rapidly escalating series of violent armed robberies, Stout shot a sixty-four year old shopkeeper in the face, killing her, while robbing a small, neighborhood variety store in the middle of the afternoon. He was nineteen and on parole when he committed the murder. He was not apprehended until a month later, when engaged in yet another armed robbery, this time of a laundromat. Investigation reports note Stout was struggling with an officer and trying to get a gun from his pocket when another officer intervened and helped subdue Stout. The gun the officers

removed from Stout's pocket was "fully loaded and the hammer cocked."

Stout was convicted by a jury in 1982 of the murder of the shopkeeper and sentenced to life imprisonment with a minimum term of twenty-five years, consecutive to a ten-year term he was then serving for the armed robbery of the laundromat. During his first eighteen years in prison he accumulated a disciplinary record of forty-seven prohibited acts, eleven of them asterisk infractions. See N.J.A.C. 10A:4-4.1. He was also convicted in 1997 of possession of a controlled dangerous substance while in prison, for which he received a five-year sentence. Stout's last disciplinary infraction was in November 2000, nearly eighteen years ago. He is incarcerated at Northern State Prison where he maintains gang minimum custody status. See N.J.A.C. 10A:9-4.3(d).

Stout first became eligible for parole in 2009 after nearly thirty years in prison. The Parole Board denied parole and set a fifteen-year (180-month) FET. We affirmed the denial of parole in 2011 under the standard of the 1979 Parole Act applicable in Stout's case, that parole must be granted unless shown by a preponderance of the evidence that there is a substantial likelihood he will commit another crime if released. N.J.S.A. 30:4-123.53(a) (1979), amended by L. 1997, c. 213, § 1;

N.J.S.A. 30:4-123.56(c) (1979), amended by L. 1997, c. 213, § 2; see In re Trantino (Trantino VI), 166 N.J. 113, 126 (2001) (explaining application of the 1979 Act).

We reversed the fifteen-year eligibility term, however, noting it "substantially exceeded the presumptive twenty-seven month limit by more than twelve years." Stout v. N.J. State Parole Bd., No. A-5064-09 (App. Div. June 7, 2011) (slip op. at 8). We found the Board's reasons, that Stout was "unable to identify the causes of [his] violent behavior"; had "failed to develop adequate insight into [his] criminal personality characteristic"; "failed to appropriately and adequately address a contributing factor (substance abuse) of [his] violent behavior"; "committed a new criminal offense during [his] incarceration"; and "continued [his] anti-social, maladaptive behavior during [his] incarceration by committing numerous serious institutional infractions," "unpersuasive to warrant the imposition of an FET nearly seven times the presumptive term." Id. at 8-10. Although acknowledging the Board's findings "clearly warrant serious notice," we concluded an FET of fifteen years was "manifestly excessive, even in light of the confidential materials" available to the Board, and "did not properly account for the temporal remoteness of Stout's

criminality and prohibited acts, the last occurring in 1997 and 2000 respectively." Id. at 10.

On remand in 2012, the Board re-imposed the fifteen-year FET "employing precisely the same factors it employed in 2008." Stout v. N.J. State Parole Bd., No. A-5695-11 (App. Div. Jan. 7, 2014) (slip op. at 3). We reversed in 2014. Noting the Board was not free "to simply reinstate its prior decision" establishing an FET we had deemed "manifestly excessive," we again remanded to the Board "to impose an appropriate term in conformity with law." Id. at 3, 6.

A three-member panel of the Board reconsidered the fifteen-year FET for the second time in February 2014, reducing it by five years. Upon application of work and minimum custody credits, the then ten-year FET, begun on Stout's first eligibility date in 2009, was scheduled to expire on July 20, 2014. The full Board affirmed the five-year reduction of Stout's FET ten days after it had expired. Stout v. N.J. State Parole Bd., Nos. A-0034-14 and A-3623-14 (App. Div. Nov. 15, 2016) (slip op. at 5). As we explained on Stout's appeal of that decision:

> Because Stout was already again eligible for parole at the time the Board rendered its final decision on remand, a two-member Board panel considered his case again on July 25, 2014, using an updated confidential

> psychological assessment. The members split, one voting that Stout be paroled and the other that parole be denied. Accordingly, pursuant to N.J.A.C. 10A:71-1.3(e), a third member was added, and on September 24, 2014, the now three-member panel voted to deny parole and set a thirty-six-month FET. Stout appealed its decision to the full Board, which affirmed the panel's decision on February 25, 2015.
>
> [Ibid.]

We considered Stout's appeals from the Board's July 30, 2014 final decision on second remand establishing the ten-year FET and its February 25, 2015 final decision denying parole and imposing a thirty-six-month FET together in the fall of 2016. By that time, the Board's February 2015 thirty-six-month FET had also expired, and we were advised the Board had recently again denied Stout parole and established a sixty-month FET, which was not then final pending administrative appeal. Id. at 2. As Stout had already served out the reduced ten-year FET and the three-year FET the Board subsequently imposed on expiration of that ten-year term, we determined there was no effective relief we could render regarding the FET we remanded to the Board in 2011 and 2014 and dismissed that matter as moot. Id. at 6.

Although acknowledging the same might be said of Stout's appeal from the Board's February 25, 2015 decision, we declined to dismiss it because even though the FET had expired, we had

yet to consider the Board's decision to deny Stout parole at that time. Ibid. Having been advised in response to our inquiry that the Board had again denied Stout parole and established a five-year (sixty-month) FET, which began to run on December 3, 2015, subject to internal appeal and thus not yet final, we deferred decision on the Board's February 25, 2015 decision to deny parole for consolidation with the matter then pending before the Board upon the filing of a notice of appeal in that case. Id. at 6-7. Our aim was to avoid continuing a cycle that had obviously "thwarted effective appellate review of this case for several years." Id. at 7.

Although we had intended to hear both cases last term, they were not ready for submission to the court until last fall. After reviewing the briefs, we determined, sua sponte, to appoint counsel for Stout to assist him in presenting the issues raised by the appeals. Accordingly, we appointed Ronald K. Chen of the Rutgers Constitutional Rights Clinic to represent Stout, permitted the filing of supplemental briefs and listed the appeals for oral argument.[1] We now have before us, as counsel

---

[1] We note here our gratitude to Professor Chen for accepting appointment as counsel for Stout. We appreciate his professionalism and zealous advocacy and that exhibited by the students he supervised who participated in presenting these appeals, including Mr. Chwang, who argued the cause.

for Stout describes them, "two separate denials of parole on two non-identical (but functionally overlapping) administrative records," presenting the same issue, that is, whether a preponderance of the credible evidence in the record supports the Parole Board's determination that there is a substantial likelihood that Stout will commit another crime if released on parole.

The Parole Board documents its decisions using a checklist of "mitigating factors" and "reasons for denial." In its September 24, 2014 decision denying Stout parole, the Board panel checked off the following mitigating factors:

- Participation in programs specific to behavior.

- Participation in institutional programs.

- Average to above average institutional reports.

- Institutional adjustment has been favorable. (Last infraction: 11/11/00)

- Attempt made to enroll and participate in programs but was not admitted.

- Minimum custody status achieved/maintained. G[ang] M[inimum]

- Commutation time restored.

The Board checked off the following reasons for denial:

- Prior criminal record noted.

8

- Nature of criminal record increasingly more serious.

- Current opportunity on parole revoked for the commission of new offenses.

- Prior opportunities on probation/parole have failed to deter criminal behavior.

- Prior opportunity on parole has been violated in the past.

- Prior incarceration did not deter criminal behavior.

- Institutional infractions serious in nature, resulting in loss of commutation time; confinement in detention and Administrative Segregation.  Last infraction 11/11/00.

- Insufficient problem resolution.  Specifically, Lack of insight into criminal behavior.  As demonstrated by Panel interview; Documentation in case file and Confidential material/professional report relied on.

- Commission of a crime while incarcerated.

- Risk assessment evaluation.  LSI-R [Level of Service Inventory-Revised score] 24

In its February 25, 2015 decision affirming the denial of Stout's parole, the Board added the following narrative remarks:

> The Board finds that the Board panel conducted your hearing to determine your suitability for parole.  The Board panel had the ability to ask you questions and review your case in order to evaluate whether you have gained the problem resolution necessary in order to ensure that you will abide by conditions of parole if released.  The Board panel determined, based on your interview and its review of the file, that you do not demonstrate the insight necessary in order to be a viable candidate for parole release.

9

Although you may believe that you have made strides in this area, and feel that you should have been paroled because there are no new negative factors in your case, the Board panel found otherwise. Based on its review, the Board concurs with the Board panel's determination and, therefore, your contention is without merit.

. . . .

Based upon consideration of facts cited above, the Board finds that the Board panel has considered the aggregate of information pursuant to N.J.A.C. 10A:71-3.11 and fully documented and supported its decision pursuant to N.J.A.C. 10A:71-3.18(f). Additionally, in assessing your case, the Board concurs with the determination of the Board panel that a preponderance of the evidence indicates that there is a substantial likelihood that you would commit a crime if released on parole at this time. Accordingly, the Board affirms the Board panel's September 14, 2014 decision to deny parole and establish a thirty-six (36) month future eligibility term. You will be scheduled for a subsequent parole release hearing when it is appropriate.

In its September 15, 2016 Notice of Decision denying Stout parole, the full Board checked off the following mitigating factors:

- Infraction free since last panel.

- Participation in programs specific to behavior.

- Participation in institutional programs.

10

- Institutional reports reflect favorable institutional adjustment.

- Positive adjustment to TC program/ Assessment Center/ RCRP.

- Minimum custody status achieved/maintained.

The Board checked off the following reasons for denial:

- Serious nature of offenses.

- Prior offense record is extensive.

- Offense record is repetitive.

- Nature of criminal record increasingly more serious.

- Committed to incarceration for multiple offenses.

- Current opportunity on parole revoked for the commission of new offenses.

- Prior opportunities on probation/parole have failed to deter criminal behavior.

- Prior opportunity on probation/parole has been violated in the past for technical violation(s).

- Prior incarceration did not deter criminal behavior.

- Institutional infractions serious in nature, resulting in loss of commutation time; confinement in detention and/or Administrative Segregation.  Last infraction 11/11/2000 *204.

- Insufficient problem resolution.  Specifically, lack of insight into criminal behavior.

  Other:  Inmate presents as a troubled individual who does not understand his past violent decision-making.  Further, the Board finds the inmate has only a superficial understanding [of] the triggers to his

11

addiction[,] which he claims was the driving force to his criminality and affected him during his incarceration.  Inmate claims he is matured but contrary to that assertion was a presentation [rife] with uncertain and unclear answers resulting in no substantive insight articulated.

As demonstrated by interview; documentation in case file and confidential material/professional report.

- Risk assessment evaluation.  LSI-R [Level of Service Inventory-Revised score] 26

In its January 25, 2017 decision affirming Stout's denial of parole, the Board added the following narrative remarks:

> In your appearance before the Board, the Board asked you questions and reviewed your case in order to evaluate whether you have gained the problem resolution necessary in order to ensure that you will abide by the law if released.  Additionally, the Board relied on confidential material, and pursuant to N.J.A.C. 10A:71-2.2(c), identified for the record the nature of the confidential information.  The Board determined, based on your interview and its review of the file, that you do not demonstrate the insight necessary in order to be a viable candidate for parole release. Although you may believe that you have made strides in this area, the Board finds otherwise.  Specifically, the Board finds that after thirty-five (35) years of incarceration, you present as superficial in your insight and are unable to recognize the root causes of your violent behavior other than to infer that you were influenced by others and were attempting to "fit in" with your peers.  The Board further finds that your unspecific answers are demonstrative of your failure to fully understand the severity of your violent actions, and that you are ill-equipped for parole release and

in need of additional programming and counseling. The Board, therefore, finds your contention that the Board unfairly relied upon the same factors as it has relied upon in the past to be without merit.

. . . .

Based upon consideration of the facts cited above, the Board finds that it has considered the aggregate of information pursuant to N.J.A.C. 10A:71-3.11 and fully documented and supported its decision pursuant to N.J.A.C. 10A:71-3.20(e). Therefore, the Board affirmed its determination rendered on July 20, 2016 that a preponderance of the evidence indicates that there is a substantial likelihood that you would commit a crime if released on parole at this time; that parole be denied; and that a future eligibility term established pursuant to N.J.A.C. 10A:71-3.21(a), (b) and (c) is clearly inappropriate due to your lack of satisfactory progress in reducing the likelihood of future criminal behavior. The Board further affirmed its determination rendered September 15, 2016 to establish a 60 month future eligibility term pursuant to N.J.A.C. 10A:71-3.21(e). You will be scheduled for a subsequent parole hearing when it is appropriate.

Stout appeals, contending the Parole Board abused its discretion by failing to sufficiently articulate its findings, thus precluding meaningful judicial review, that it failed to consider how long ago he committed his violent crimes and that its finding he "lacked 'insight' into his prior criminal behavior thirty-seven years ago applies an amorphous standard

13

that is not related to the current risk of recidivism." Stout also contends the Board has acted arbitrarily and capriciously in "repeatedly impos[ing] excessive future eligibility terms" on him. We reject those arguments.

We start our analysis understanding the Parole Board's decisions are highly "individualized discretionary appraisals," Trantino VI, 166 N.J. at 173 (2001) (quoting Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 359 (1973)), entitled to both a presumption of validity, see In re Vey, 272 N.J. Super. 199, 205 (App. Div. 1993), aff'd, 135 N.J. 306 (1994), and our deference to "its expertise in the specialized area of parole supervision," J.I. v. N.J. State Parole Bd., 228 N.J. 204, 230 (2017). We may not upset the determination of the Parole Board absent a showing that it was arbitrary, capricious, or unreasonable; that it lacked fair support in the evidence; or that it violated legislative policies. Trantino v. N.J. State Parole Bd., 154 N.J. 19, 24-25 (1998). The burden is on the inmate to show the Board's actions were unreasonable. McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002).

Applying those standards here, notwithstanding our prior misgivings about the Parole Board's imposition of FETs in this matter, we are satisfied the Board's most recent denial of

parole was based on a proper analysis of the factors it deemed relevant and was supported by sufficient credible evidence in the record. We likewise find no basis to overturn the Board's sixty-month FET.

In his supplemental brief, Stout contends the factors relied on by the Parole Board to deny him parole "can be grouped into two general categories" consisting first of his "prior criminal history and early record of institutional infractions," which he does not dispute, but notes occurred either on or before the date of the murder in 1980, or else more than seventeen years ago during his incarceration, and second, of the Board's finding "he had not demonstrated sufficient 'insight into [his] violent criminal behavior'" which led the Board to conclude he "had 'insufficient problem resolution' skills."

He argues the Board "failed to explain why the most recent 17 year record of completely acceptable behavior," combined with the mitigating factors the Board found, including participation in institutional programs and those targeted to his specific behavior, average to above average institutional reports reflecting favorable institutional adjustment and attaining gang minimum custody status, "are not more reliable predictors of the current likelihood of reoffending, than those factors it cited that are qualitatively and quantitatively more remote in time

and circumstance."  He contends the Board's "failure to address through articulated analysis the logical inference that the most recent 17 year record of commendable conduct . . . is less indicative of the current risk of recidivism that he presents, compared to conduct that occurred up to 37 years ago, is a fatal deficiency" in the findings.

Those arguments, in our view, would have more resonance were we looking only at the Board's February 2015 affirmance of the split panel's vote to deny Stout parole.  The September 24, 2014 notice of the panel decision is devoid of any comment, consisting only of a series of checkmarks noting the mitigating factors the panel found and its reasons for denying parole. Although that may suffice in some circumstances, we could not find it would here in light of the seriousness of Stout's crimes and his mixed record in prison.  The Board's narrative in its February 2015 final decision offers no insight into the question Stout poses in his supplemental brief, namely, why did the majority of the three-member panel find Stout's most recent seventeen-year commendable record a less "reliable predictor[] of [his] current likelihood of reoffending" at age fifty-seven than the crimes he committed when he was nineteen and a drug addict, even taking into account Stout's risk assessment

evaluation score of twenty-four, indicating a medium risk of recidivism, and why did the full Board affirm that finding.

Accordingly, were we looking only at the Board's 2015 decision to deny Stout parole, we would vacate that decision and remand for a statement of reasons explaining the Board's findings.  See Kosmin v. New Jersey State Parole Bd., 363 N.J. Super. 28, 40 (App. Div. 2003).  But Stout's appeal of that 2015 decision, which we deferred deciding in response to his request that we take judicial notice the Board had again denied him parole in July 2016, is now certainly moot in light of the Board having decided to deny parole following the 2016 hearing before the full Board.  A remand to the Board to explain a decision superseded by one which we also review here would be pointless. Accordingly, we dismiss the appeal in A-3623-14 as moot.  See Redd v. Bowman, 223 N.J. 87, 104 (2015) (quoting Deutsche Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214, 221-22 (App. Div. 2001)) (explaining an "issue is 'moot when our decision . . . , when rendered, can have no practical effect on the existing controversy'").

The Board's Notice of Decision following Stout's parole hearing before the full Board does not suffer the same deficiencies as the Notice of Decision issued by the Board panel in September 2014.  As we noted, the Board included in its

September 15, 2016 Notice of Decision a record of its impressions of Stout following the full Board hearing, that he presented as "a troubled individual who does not understand his past violent decision-making" and "has only a superficial understanding [of] the triggers to his addiction[,] which he claims was the driving force to his criminality and affected him during his incarceration."

Moreover, the Board provided Stout a detailed seven-page decision explaining its reasons for imposing a sixty-month FET following the July 2016 full Board hearing. In that decision, the Board reviewed Stout's juvenile record, which began at age fourteen when he was arrested, and later adjudicated delinquent, for malicious damage, followed by adjudications for possession of marijuana, breaking and entering — larceny, breaking and entering, assault and battery, possession of stolen property, trespassing and attempted breaking and entering. Stout was twice afforded juvenile parole and twice returned as a parole violator.

Following his eighteenth birthday, Stout was convicted of robbery and sentenced to an indeterminate term of eight years in the custody of the Department of Corrections. He was paroled a year later. Two months after being released on parole, Stout murdered the shopkeeper and was apprehended a month later in the

course of the armed robbery of the laundromat. The Board also noted that while in prison, Stout was indicted in 1995 for possession of CDS, possession of CDS with intent to distribute, distribution of CDS and conspiracy, eventually entering a negotiated plea to possession.

In laying out its reasons for the sixty-month FET, the Board noted the serious nature of the offense, that Stout's offense history was both extensive and repetitive, his criminal record was increasingly more serious, he was incarcerated for multiple offenses committed on different occasions, that he was on parole when he committed the murder, had previously violated parole and that both incarceration and opportunities for community supervision failed to deter his criminal behavior. The Board also noted that although Stout's last infraction, *204 use of prohibited substances, was almost eighteen years ago, the number and seriousness of his infractions led it to conclude his "overall institutional record is representative of a disruptive and anti-social individual."

In explaining its finding that Stout lacked insight into his violent criminal behavior and minimized his anti-social decision-making, the Board wrote:

> The [hearing the] Board conducted on
> July 20, 2016, marked the third parole
> eligibility hearing conducted in your case.

19

The record reflects that at the age of nineteen (19) you committed the offense of Murder. The murder involved you shooting an elderly woman in the face during the course of a robbery. Of note is the fact that you were on parole for a prior robbery when you committed murder. Additionally, you were not arrested immediately after killing the victim and you committed an additional robbery roughly four (4) weeks later.

You have since been incarcerated for thirty-five (35) years and are currently fifty-four (54) years of age. The Board conducted a hearing in your case to determine your suitability for parole release at the current time and assess whether there is a substantial likelihood that you would commit a new criminal offense if released on parole. To make such a highly individualized discretionary appraisal in your case, the Board engaged you in discussion for an extended period of time, nearly three (3) hours. The Board asked questions regarding your current state of mind and your view and perception of the type of person you believe you were in the years leading up to the present incarceration. You were also asked about insight that you may have gained from the programming/counseling you have thus far completed during your incarceration. The Board considered your understanding of your past criminal conduct and determined whether you possess the ability to recognize and appropriately process factors that could affect you to behave in a violent and criminal manner in the future. The manner in which you will conduct yourself and address/process yourself if a member of society was an important aspect of the Board's decision in assessing the possibility of future criminal behavior on your part.

A-3623-14T1

The Board was not impressed with the presentation that you put forth to them. Much like previous hearings, the insight you articulated was extremely superficial and demonstrated that you do not possess a deep thinking into you[r] past actions and have not yet begun a substantive introspection into why you chose to behave in a violent manner during your formative years. The Board finds that you do not fully understand why you have behaved in a criminal manner leading to the murder regardless of the programming and counseling you have completed. At the hearing you were asked multiple times why you chose to commit a violent murder during the course of a robbery, while on parole for a previous robbery. You described yourself as a "lost person" that made "bad choices" and that you were a "drug addict." Regarding the violent behavior you exhibited in the years prior to the murder, you indicated that you were "trying to fit in" that you were affected by "peer pressure" and that you were "trying to be something that you weren't." You did not expound in any greater detail on these details you provided. Later in your hearing you stated your criminal behaviors were not due to your upbringing and that you believe you behaved as a result of "the choices of my friends." Asked about your last infraction, the use of heroin in 2000, you stated that you were "dealing with my reality . . . the demons in prison." You admitted that you were an addict and would use CDS three (3) to (4) times per week. Asked what your triggers are for a possible drug relapse you stated "the smell of heroin," "missing my family" and "being around people who get high."

The Board would expect that after years of incarceration and program participation you would be able to express and articulate yourself in a manner that would demonstrate

21

that you understand your past actions and decision making and that you are prepared to re-integrate yourself into society crime free. Asked about insight you believe you have gained from programming, you noted Focus On the Victim and Thinking for a Change. Asked to articulate what specifically you learned from the programs, you stated "I have matured," "I am not the same person" and that you have "finally arrived as a human being." Again, you did not further expound upon these non-specific answers. That was particularly concerning taking into consideration you self-praised your perceived "maturity" yet you committed a CDS offense as an inmate at the age of thirty-four (34). As noted the Board found such answers to be superficial and clearly not representative of someone with insight and instead representative of someone still searching themselves as to why they behaved in the violent manner they have. You referenced numerous times that you believe your behaviors were to fit in and that others influenced your actions. However, you presented as not understanding as to why your desire to fit in socially impelled you to behave in an extremely violent manner.

Overall, the Board finds that you continue to be only superficial in your understanding of your past behaviors and unaware as to why you led a life of crime, leading to the murder. More work needs to be done by you, through programming and counseling, to gain an introspection as to why you have chosen to act and react in the manner you have. After over three (3) decades in prison you present as someone who truly does not understand the severity of his [crimes]. It is clear you must address the issues described within this Notice with further counseling in an effort to gain insight into your criminal decision-making. Therefore, the Board finds that you require

A-3623-14T1

> additional time to address deficiencies in
> your lack of insight as evidenced by your
> presentation and non-specific answers you
> provided to Board questioning.

Stout in his supplemental brief argues "insight" is not among the twenty-three factors listed in N.J.A.C. 10A:71-3.11(b), the regulation that guides the Board in assessing an inmate's likelihood of recidivism. He complains "this malleable and vague concept is too amorphous to allow meaningful judicial review," and notes "a number of obvious reasons, unrelated to current propensity to reoffend, why an inmate in his mid-50s would have difficulty articulating the motivating causes for his actions decades before when he was a 19 year old drug addict." Stout argues we should reject the Board's reliance on "the elastic concept of lack of 'insight'" into prior criminal behavior as predictive of an inmate's current propensity to reoffend as ad hoc rule-making in violation of Metromedia, Inc. v. Dir., Div. of Taxation, 97 N.J. 313, 331-32 (1984). We reject those arguments as incompatible with the Legislature's delegation to the Parole Board.

We have already here acknowledged that the Board's reliance on an inmate's "lack of insight into his violent criminal behavior" untethered to specific facts would likely be an insufficient basis to support denial of parole. But that is not

to say that it is insignificant to the Board's assessment of an inmate's propensity to further criminality. An inmate's own understanding or insight into the reasons for his violent criminal behavior figures into at least three of the factors included in N.J.A.C. 10A:71-3.11(b): (11) Documented changes in attitude toward self or others, (12) Documentation reflecting personal goals, personal strengths or motivation for law-abiding behavior and (17) Statements by the inmate reflecting on the likelihood that he or she will commit another crime; the failure to cooperate in his or her own rehabilitation; or the reasonable expectation that he or she will violate conditions of parole.

Here, the Board explained in considerable detail Stout's inability to identify and articulate the underlying reasons for his having become entrenched, beginning at age fourteen, in a life of crime, with no apparent appreciation or regard for the consequences of his choice for himself or others. Neither incarceration nor parole had any apparent effect on his conduct. Peer pressure and falling in with the wrong crowd would hardly appear an adequate explanation for the brutal and callous killing of an elderly shopkeeper not resisting his efforts to rob her small variety store in broad daylight. Moreover, his conviction and sentence to life in prison does not appear to have altered his outlook, as his forty-seven disciplinary

24                                                      A-3623-14T1

infractions committed during his first twenty years in prison attest. While no longer apparently using drugs, he acknowledged "the smell of heroin" or "being around people who get high," were relapse triggers for him, leaving the Board in doubt of his ability to remain drug-free if paroled. Given Stout's claim that his crimes were driven by addiction, the Board had good reason to be concerned by those answers.

The Parole Board is charged "with the difficult and sensitive task of evaluating the advisability of parole release." In re Hawley, 192 N.J. Super. 85, 92-93 (App. Div. 1983) (quoting Greenholtz v. Inmates of Neb. Penal & Corr. Complex, 442 U.S. 1, 10 (1979)), aff'd 98 N.J. 108 (1984). "The decision turns on a 'discretionary assessment of a multiplicity of imponderables, entailing primarily what a man is and what he may become rather than simply what he has done.'" Greenholtz, 442 U.S. at 10 (quoting Sanford H. Kadish, The Advocate and the Expert — Counsel in the Peno-Correctional Process, 45 Minn. L. Rev. 803, 813 (1961)). We are in no position to second-guess the Board's decision to weigh more heavily Stout's crimes and poor adjustment to prison in assessing his prospects for recidivism than his recent good behavior in light of his inability to offer the Board any greater insight into his motives for either.

As our Supreme Court has recently noted, "[s]tripped to its essentials, a parole board's decision concerns a prediction as to an inmate's future behavior, a prognostication necessarily fraught with subjectivity." Acoli v. N.J. State Parole Bd., 224 N.J. 213, 222 (2016) (quoting Trantino VI, 166 N.J. at 201 (Baime, J.A.D. (temporarily assigned), dissenting)). As Judge Baime observed, "[t]he aims of punishment are several, but the hope is that the sentence, mild or severe, will reshape the offender." Id. at 216 (internal citation omitted). We are satisfied there is sufficient credible evidence in the whole record to support the Board's finding that incarceration has not reshaped Stout and that there exists a substantial likelihood he would commit another crime if released on parole at this time.

We likewise find no merit in Stout's argument that the Board's decision to establish a sixty-month FET was arbitrary and capricious. N.J.A.C. 10A:71-3.21(d) permits the Board to impose an FET that differs from the presumptive schedule if that schedule is clearly inappropriate as a result of the inmate's lack of progress in reducing the likelihood of future recidivism. In imposing an FET in excess of the presumptive term, the panel must consider the factors enumerated in N.J.A.C. 10A:71-3.11 that pertain to eligibility for parole. The Board's decision makes clear it did so here. Further, the Board

26

established the term understanding it would be reduced by commutation, earned work and minimum custody credits. Counsel for the Parole Board has advised that application of those credits in Stout's case will reduce his sixty-month FET to thirty-eight months.

We find none of petitioner's additional arguments to be of sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(2).

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION