**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2691-21

BRANDAN ARMS,

     Appellant,

v.

NEW JERSEY STATE
PAROLE BOARD,

     Respondent.

_____

Submitted November 6, 2023 – Decided November 20, 2023

Before Judges Sabatino and Chase.

On appeal from the New Jersey State Parole Board.

Goldenberg, Mackler, Sayegh, Mintz, Pfeffer, Bonchi & Gill, attorneys for appellant (Elliott J. Almanza, on the brief).

Matthew J. Platkin, Attorney General, attorney for respondent (Sookie Bae-Park, Assistant Attorney General, of counsel; Dorothy M. Rodriguez, Deputy Attorney General, on the brief).

PER CURIAM

Appellant Brandon Arms appeals from an April 27, 2022 final agency decision by the New Jersey State Parole Board (Board) revoking his parole and ordering him to serve eighteen months in state prison for violating the terms of his parole supervision for life (PSL).  We affirm.

I.

We set forth the following procedural history to give context to the Board's decision.  In 2010, Arms was convicted and sentenced to three years in prison for third-degree endangering the welfare of a child, N.J.S.A. 2C:24-4(a).  In addition to his custodial term, Arms was sentenced to a mandatory term of PSL.  Arms was released on parole on August 8, 2012.

Arms failed to comply with his PSL conditions and returned to custody in 2014.  After being released from custody in early 2015, he was quickly arrested and taken into custody for unlawful possession of a sawed-off shotgun in December 2015.  Arms pled guilty to possession of a weapon by a certain person having a prior conviction, N.J.SA. 2C:39-7(b), and was sentenced to a term of five years in state prison with forty-two months of parole ineligibility.  Arms was released from incarceration, and parole supervision commenced on June 6, 2019.

A-2691-21

In June 2021, parole officers received a tip that Arms may have been in possession of a firearm, involved in narcotics transactions, and stored the prohibited items in the space beneath the bottom drawer of the dresser in his bedroom.

On June 25, 2021, parole officers arrived at Arms' home to conduct a search. Arms was not home when the officers first arrived, but after Officer Cruz called to alert him to their presence and intent to search, he arrived home in his Ford Mustang within five minutes. Arms was the sole occupant of the car, which was registered to him.

In Arms' bedroom, in the space beneath the bottom drawer of the dresser, the parole officers found two battery-operated scales and one box of fifty rounds of .25-caliber ammunition. A search of Arms' vehicle revealed a small .25-caliber automatic handgun in the car's center console with ten rounds in the magazine and no round in the chamber. A search of the vehicle's trunk also revealed: a box containing fifty rounds of .25-caliber ammunition; fifteen loose 9-millimeter rounds; sixty-seven small plastic Ziploc-style baggies; one grinder; and nine marijuana seeds in a small tube. The .25-caliber ammunition found in the trunk and bedroom matched that found in the gun.

A-2691-21

After the discovery of the items, Arms was taken into custody without issue and served with a notice of probable cause hearing. Senior Parole Officer Jose Cruz testified at the probable cause hearing to his findings, which corroborated the above facts. Arms was represented by counsel during the hearing and presented his girlfriend and mother of one of his children, M.T., as a witness to his defense.

Arms and M.T. testified that the tipster was appellant's ex-partner who was motivated by a dispute between the tipster and Arms over parental custody of their shared child. Arms testified the tipster was "jealous of [M.T.'s] relationship with [him]," and had previously threatened him and sought his return to custody. He further testified he tested negative for drugs and had a medical marijuana card. M.T. testified the tipster had previously threatened and stalked her. She also testified Arms never sold drugs or owned weapons while they were together.

The hearing officer sustained probable cause for one of the two charged parole violations. He found probable cause that Arms violated PSL conditions because he was in possession of a loaded firearm. The hearing officer found that Arms had not violated other conditions of PSL as he had a medical marijuana card and was thus permitted to have paraphernalia and seeds.

4

A final revocation hearing was held in November 2021. Officer Cruz again testified as to what was found in the search of Arms' house and car. Arms testified that he was unaware the gun was in his vehicle. He further testified he had been compliant with the terms of his parole supervision.

M.T. testified that on June 21, 2021, three days before the search warrant was executed, she found a shiny object on the ground near the outside perimeter of her residence. When she realized it was a gun, she picked it up with a newspaper and placed it in the middle console of Arms' car for safekeeping from her children, particularly her oldest son who was then thirteen years old. She noted she was never able to inform Arms that she had placed a gun in his car because he was asleep when she came in that night, and he had left the home before she had a chance to tell him. M.T. further explained her difficulty communicating with Arms due to relationship issues and his refusal to answer her calls.

The hearing officer found Officer Cruz to be credible and reliable and noted that Arms had previously failed to refrain from possessing firearms, as his PSL had been revoked in both 2014 and 2016 for his possession of firearms. Moreover, the hearing officer did not find the testimony of Arms and M.T. to be credible and reliable. Further, he found the testimony given by Arms and M.T.

A-2691-21

did not negate the evidence and testimony presented by Officer Cruz. The hearing officer issued a decision finding Arms had committed a parole violation and recommended to the Board panel that they revoke parole and impose an eighteen-month period of incarceration.

In December 2021, Arms' counsel submitted additional written comments to the Board panel, stating there was a lack of clear and convincing evidence that Arms was in possession of a firearm. The Board panel reviewed the record and accepted the hearing officer's credibility findings. The Board panel determined the violation represented Arms' third violation of the terms of his PSL and the violation was serious. The Board panel revoked Arms' parole and ordered that he be incarcerated for eighteen-months.

On April 27, 2022, the entire Board issued a final agency decision affirming the panel's decision. This appeal followed.

## II.

Arms raises the following issue on appeal:

> The State did not present clear and convincing evidence
> that Appellant knowingly possessed a firearm, hence
> the parole board erred in revoking his parole.

"Our role in reviewing an administrative agency's decision is limited." Malacow v. N.J. Dep't of Corr., 457 N.J. Super. 87, 93 (App. Div. 2018) (citing

Circus Liquors, Inc. v. Governing Body of Middletown Twp., 199 N.J. 1, 9 (2009)).  "Our review of the Parole Board's determination is deferential in light of its expertise in the specialized area of parole supervision."  J.I. v. N.J. State Parole Bd., 228 N.J. 204, 230 (2017) (citing McGowan v. N.J. State Parole Bd., 347 N.J. Super. 544, 563 (App. Div. 2002)).  We recognize that "[t]o a greater degree than is the case with other administrative agencies, the . . . Board's decision-making function involves individualized discretionary appraisals." Trantino v. N.J. State Parole Bd., 166 N.J. 113, 201 (2001) (citing Beckworth v. N.J. State Parole Bd., 62 N.J. 348, 358-59 (1973)).  Such appraisals are presumed valid.  McGowan, 347 N.J. Super. at 563.  Accordingly, "we will reverse a decision of the Board only if the offender shows that the decision was arbitrary or unreasonable, lacked credible support in the record, or violated legislative policies."  K.G. v. N.J. State Parole Bd., 458 N.J. Super. 1, 30 (App. Div. 2019) (citing Trantino v. N.J. State Parole Bd, 154 N.J. 19, 24-25 (2019)). See also Application of Hawley, 192 N.J. Super. 85, 89 (App. Div. 1983), aff'd sub nom.  In re Hawley, 98 N.J. 108 (1984).

The question for the court is "'whether the findings made could reasonably have been reached on sufficient credible evidence present in the record,' considering 'the proofs as a whole,' with due regard to the opportunity of the one

who heard the witnesses to judge of their credibility." Close v. Kordulak Bros., 44 N.J. 589, 599 (1965) (quoting State v. Johnson, 42 N.J. 146, 162 (1964)). Credibility determinations made by those able to hear and see the individual are entitled to substantial deference. See Goulding v. N.J. Friendship House, Inc., 245 N.J. 157, 167 (2021); N.J. Dep't of Envtl. Prot. v. Huber, 213 N.J. 338, 374 (2013); H.K. v. State of N.J., 184 N.J. 367, 384 (2005); Clowes v. Terminix Int'l Inc., 109 N.J. 575, 587-88 (1988). Additional deference is afforded to the agency because their expertise is a pertinent factor. Close, 44 N.J. at 599.

"A person who has been sentenced to a term of parole supervision and is on release status in the community pursuant to . . . [N.J.S.A.] 2C:43–7.2 is subject to the provisions and conditions set by the appropriate board panel." N.J.S.A. 30:4–123.51b(a). The Board has authority "to revoke the person's release status and return the person to custody for the remainder of the term or until it is determined, in accordance with regulations adopted by the board, that the person is again eligible for release . . .." Ibid.

"The Board must exercise its authority to revoke release status 'in accordance with the procedures and standards' codified in N.J.S.A. 30:4–123.59 through N.J.S.A. 30:4–123.65." Hobson v. New Jersey State Parole Bd., 435 N.J. Super. 377, 382 (App. Div. 2014) (quoting N.J.S.A. 30:4-123.51b(a)).

A-2691-21

Revocation of parole is permitted only when clear and convincing evidence shows that the person "has seriously or persistently violated the conditions," N.J.S.A. 30:4–123.60(b) and N.J.S.A. 30:4–123.63(d), or if they have been "convicted of a crime" while released, N.J.S.A. 30:4–123.60(c). "That standard of proof requires evidence that persuades the fact finder 'that the truth of the contention is "highly probable."'" Hobson, 435 N.J. Super. at 387 (quoting In re Perskie, 207 N.J. 275, 290 (2011)).

One condition of Arms' release was that he was not to possess a firearm. Arms argues his possession "cannot be based on mere presence at the place where the contraband is located. There must be other circumstances or statements permitting the inference of defendant's control of the contraband." State v. Scott, 398 N.J. Super. 142, 150-51 (App. Div. 2006). However, N.J.S.A. 2C:39-2 contains several codified presumptions, including:

> a. . . . When a firearm . . . is found in a vehicle, it is presumed to be in the possession of the occupant if there is but one. If there is more than one occupant in the vehicle, it shall be presumed to be in the possession of all, except under the following circumstances:
>
> . . . .

> (2) When the vehicle is not a stolen one and the weapon or other instrument is found out of view in a glove compartment, trunk or other enclosed customary depository, it shall be presumed to be in the possession of the occupant or occupants who own or have authority to operate the vehicle; . . . .

This presumption allows the factfinder to draw an inference of possession. State v. Bolton, 230 N.J. Super. 476, 480-81 (App. Div. 1989).

We must be deferential to the Board's credibility findings. See, e.g., N.J. Friendship House, Inc., 245 N.J. at 167. The Board's finding that Arms and M.T. lacked credibility is not arbitrary, as their testimony contained several logical gaps. For example, as already noted, their testimony did not account for the fact that the parole officer found ammunition matching the gun in the trunk of Arms' car and in his bedroom. Additionally, M.T. testified she was distraught and scared for her children upon finding the gun, yet she did not seek help from Arms, who was at her residence and familiar with guns, until after she claims to have picked up the gun and placed it in his car. She also testified that despite trying to tell Arms of the loaded gun she placed in his car, she did not wake him, text him after he left, or otherwise manage to inform him she had placed a gun in his car while he was on parole.

Here, the credible facts support the inference that Arms knowingly possessed the gun because the gun was found in a car owned by him, in which

he was observed to be the sole driver at the time it was discovered. Additionally, ammunition matching the bullets in the gun was found both in the trunk of Arms' vehicle and hidden under a drawer in his bedroom at his residence. While Arms and M.T. offered testimony denying his culpable mental state, their testimony was found to lack credibility by the hearing officer, and it did not, beyond mere speculation, account for how the compatible ammunition came to be both in Arms' home and the trunk of his car without his knowledge. Therefore, there was sufficient "clear and convincing" credible evidence supporting a finding that Arms "failed to refrain from owning or possessing firearms, as defined by N.J.S.A. 2C:39-1(f), for any purpose" in violation of his parole agreement.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2691-21